This is a tax case.
This case was initiated when the taxpayers filed a petition with the Alabama State Department of Revenue (Department) for a declaratory ruling as to the applicability of Ala. Code (1975), § 40-21-58. Following an administrative hearing, the administrative law judge held that the taxpayers were subject to the tax imposed by § 40-21-58.
The taxpayers appealed to the Montgomery County Circuit Court, which disagreed with the administrative law judge and held that the taxpayers were not subject to the tax imposed by § 40-21-58.
The Department appeals. We reverse.
Section 40-21-58 imposes "a license or privilege tax upon each person engaged in the telephone business in the state of Alabama for the privilege of engaging in such business. . . ." The sole question presented by this appeal is whether the taxpayers were engaged in the "telephone business" within the scope and meaning of that term as used in § 40-21-58.
The taxpayers are what are known in the communications field as "resellers." They are engaged in the business of reselling long distance telephone service. They do not own transmission facilities, such as telephone lines, as do AT 
T and South Central Bell, whom we will refer to as the "traditional" telephone companies. Rather, the taxpayers lease long distance telephone lines from the traditional telephone companies and use those lines in furnishing long distance telephone service to their customers. The taxpayers purchase long distance telephone service from the traditional companies in bulk and can then resell such service to their customers at lower rates than the customers would ordinarily receive from the traditional companies.
It is undisputed that, when § 40-21-58 was enacted in 1935, there was no such thing in the communications field as a reseller of telephone service. Indeed, it has apparently only been since the breakup of AT T in the early 1980s that resellers have come into existence. No doubt to keep up with these changes in the communications field, the Alabama Legislature amended § 40-21-58, effective April 29, 1986, to specifically include resellers among those subject to the tax. The dispute in this case, therefore, concerns only the period prior to April 29, 1986.
The taxpayers contend that, since resellers of telephone service did not exist when § 40-21-58 was enacted, the Legislature could not possibly have intended such entities to be included within the scope of the statute's application. They also contend that the statute's subsequent amendment to specifically include resellers indicates that the Legislature did not believe or intend that resellers would be subject to the tax prior to the effective date of the amendment. We do not find either of these contentions to be persuasive.
Since § 40-21-58 does not define what it means by the term "telephone business," *Page 1390 
such term should be given its commonly understood meaning in everyday usage. Alabama Farm Bureau Mutual CasualtyInsurance Co. v. City of Hartselle, 460 So.2d 1219 (Ala. 1984); Fuller v. Associates Commercial Corp.,389 So.2d 506 (Ala. 1980). We think that such usage of the term "telephone business" or the accompanying term "telephone company" must focus upon the ability of a company, or other entity, to place persons in different locations in communication with each other by the use of telephones. Under such a construction the taxpayers would clearly be encompassed within the scope of § 40-21-58.
Because there is as yet no Alabama case law defining what constitutes a telephone business or telephone company, we must look to the case law of other states. Our research confirms our conclusion that the terms should be given the construction set forth above.
In Jones v. Cumberland Telephone Telegraph Co.,140 Ky. 165, 130 S.W. 994 (1910), the Kentucky Court of Appeals defined a telephone company in an action brought for damages for the company's failure to transmit a message. That court stated that a telephone company is a common carrier which holds "itself out to the public, in consideration of certain fees exacted, as able, ready, and willing to enter into contracts that will place persons in direct communication with each other, and enable them to talk one to the other." Jones, 140 Ky. at 168, 130 S.W. at 995.
More recently, the Colorado Supreme Court has given a similar definition to the term "telephone company." InTransponder Corp. of Denver, Inc. v. Property TaxAdministrator, 681 P.2d 499 (Colo. 1984), the state of Colorado sought to tax Transponder as a public entity. Transponder operated a satellite through which it transmitted and received electrical impulses of its customers. Focusing on the traditional role of telephone companies of providing "intercustomer communication," the Colorado Supreme Court resolved its doubts in favor of Transponder and concluded that it was not a telephone company subject to taxation as a public utility. Transponder, 681 P.2d at 504.
Two years after the Transponder case, the Colorado Supreme Court again looked at the definition of a telephone company. In United States Transmission Systems, Inc. v.Board of Assessment Appeals, 715 P.2d 1249 (Colo. 1986), the court held that United States Transmission Systems (USTS) was a telephone company and was thus subject to the property tax applicable to a public utility. As the taxpayer in this case, USTS provided its customers with long distance telephone service through the use of long distance lines or circuits it leased from traditional telephone companies.
The Colorado Supreme Court concluded that USTS provided "exactly the kind of 'intercustomer communication service' usually and ordinarily provided by telephone companies."United States Transmissions Systems, 715 P.2d at 1253. USTS had argued, as does the taxpayer in this case, that it was not a telephone company because it did not own transmission facilities and had to rely on the traditional telephone companies to complete the communications link. The Colorado Supreme Court disagreed:
 "[I]f the company directly facilitates two-way communication between a significant number of unrelated persons or businesses, as USTS did, that company is a telephone company. Since the partial breakup of the national telephone monopoly, no company provides complete and consolidated local and long distance telephone service and all essential equipment. If we were to adopt the position of USTS, no company, including Mountain Bell and AT T, could be considered a telephone company, a result we believe to be manifestly inconsistent with legislative intent."
United States Transmission Systems, 715 P.2d at 1254.
We find the logic and conclusions of the Colorado Supreme Court to be highly applicable in this case. The evidence shows that the taxpayers are engaged in the business of providing long distance communication *Page 1391 
between persons, just as the traditional telephone companies. In fact, they compete with such companies for long distance customers. Moreover, the taxpayers are regulated by the Alabama Public Service Commission as telephone customers, though the extent of such regulation differs from that of the traditional telephone companies.
In short, we conclude that the taxpayers are telephone companies engaged in the "telephone business" within the scope of § 40-21-58.
The taxpayers argue, however, that, if they are subjected to the tax imposed by § 40-21-58, the telephone calls of their customers will be subject to double taxation, since such calls will be made on lines leased from traditional telephone companies which also pay the tax. We disagree.
As the Department points out in brief, § 40-21-58 does not impose a tax on property or on telephone calls. It levies a tax on a person or other entity for the privilege of engaging in the telephone business in this state. Thus, there is no double taxation.
This case is due to be reversed and remanded for entry of a judgment not inconsistent with the above.
REVERSED AND REMANDED.
BRADLEY, P.J., and INGRAM, J., concur.