THOMAS, Judge.
 

 IEC Arab Alabama, Inc. (“IEC”), is an Alabama corporation that manufactures computer components for other businesses. Before its acquisition by IEC Electronics Corporation in November 1994, IEC was known as Accutek, Inc. Between 1990 and November 1994, Accutek did not file Alabama sales- or use-tax returns; IEC did not file any sales- or use-tax returns between December 1994 and December 1997. Accutek, and then IEC, relied on the version of § 40-23-62(1) that was in effect before the 1997 amendment of that statute (“the preamendment version of § 40-23-62(1)”); the preamendment version of § 40-23-62(1) exempted from the state use tax “[p]roperty, the gross proceeds of sales of which are required to be included in the measure of the tax imposed by the provisions of Article 1 of this chapter [i.e., the sales-tax portion of the tax code].” Because they did not make retail sales, Accu-tek and IEC were not required to collect sales taxes. Ala.Code 1975, § 40-23-2(1) (levying a privilege or license tax against persons that sell tangible personal property at retail). Because the purchases made by Accutek and IEC from Alabama sellers were subject to Alabama sales taxes and because the sellers were required to remit any sales taxes due on those sales, § 40-23-8, Ala.Code 1975, those purchases were exempt from use taxes under the pream-endment version of § 40-23-62(1). According to Accutek and IEC, any purchases they made from out-of-state sellers in situations in which the title to the property passed to Accutek or IEC in Alabama were theoretically subject to the sales tax,
 
 see
 
 § 40 — 23—1(a)(5), Ala.Code 1975 (defining the term “sale” for purposes of the sales-tax statute), and thus exempt from the use tax under the preamendment version of § 40-23-62(1).
 
 See Monroe v. Valhalla Cemetery Co.,
 
 749 So.2d 470, 472 (Ala.Civ.App.1999),
 
 overruled on other groimds by Patterson v. Gladwin Corp.,
 
 835 So.2d 137, 153 (Ala.2002) (explaining that, under the preamendment version of § 40-23-62(1), an administrative law judge and a Montgomery Circuit Court had held that sales of property delivered in Alabama by out-of-state vendors without the required nexus with Alabama to make the vendors subject to the Alabama sales tax were not subject to either the sales or the use tax).
 

 In May 1997, the Alabama legislature amended § 40-23-62(1) to close the loophole in the use-tax law created when the sales tax due on property purchased in Alabama had never actually been paid on the sale of the property.
 
 Valhalla Cemetery Co.,
 
 749 So.2d at 473. Under the preamendment version of § 40-23-62(1), if the proceeds of the sale of the property were required to be included in a computation of sales taxes, the property was not subject to the use tax; thus, property that was subject to the sales tax but on which the sales tax had not actually been paid was still exempt from the use tax.
 
 Id.
 
 The amended version of the statute exempts
 
 *372
 
 from the use tax property upon which the sales tax has actually been paid. § 40-23-62(1) (exempting from the use tax only “[p]roperty, on which the sales tax imposed by the provisions of Article 1 of this chapter is paid by the consumer to a person licensed under the provisions of Article 1 of this chapter”). This change closed the loophole and assures that property purchased by an Alabama taxpayer does not escape taxation.
 
 Valhalla Cemetery Co.,
 
 749 So.2d at 473.
 

 In October 1998, the Alabama Department of Revenue (“the Department”) entered three final assessments against IEC for the period between January 1990 and December 1997 for state sales taxes, state use taxes, and City of Arab (“the City”) use taxes.
 
 [1]
 
 IEC paid the assessments after the Department filed a tax lien against it; IEC then appealed the final assessments to the Department’s Administrative Law Division. The appeal was held in abeyance for several years pending the outcome of other tax appeals and attempts at settlement between the parties. The case was ultimately submitted to an administrative law judge (“ALJ”) on a joint stipulation of facts, on the sole issue whether the Department could apply the amendment to § 40-13-62(1) retroactively to the 1990-1997 tax years.
 

 The ALJ began his analysis with the language of the act that amended § 40-23-62(1), Act No. 97-301, which provides in § 3: “This act shall be retroactively effective for all open tax years upon its passage and approval by the Governor, or upon its otherwise becoming a law.” The ALJ then considered what years were “open tax years.” Under the Alabama Taxpayers’ Bill of Rights, § 40-2A-1 et seq., Ala.Code 1975, the Department, with certain exceptions, generally has the ability to assess taxes within three years from the date that the taxpayer filed a tax return or within three years of the date the taxes were due. § 40~2A-7(b)(2).
 

 “Any preliminary assessment shall be entered within three years from the due date of the return, or three years from the date the return is filed with the department, whichever is later, or if no return is required to be filed, within three years of the due date of the tax, except as follows:
 

 a. A preliminary assessment may be entered at any time if no return is filed as required .... ”
 

 § 40-2A-7(b)(2). Because Accutek and IEC had not been required to file a return under the preamendment version of § 40-23-62(1), the ALJ held that the Department could enter assessments relating only to the three tax years immediately preceding the preliminary assessments (which were entered in September 1998) or back to August 1995, because August 1995 use taxes would have been due in September 1995.
 
 [2]
 
 Those three years, said the ALJ, were the “open tax years” to which the amended version of § 40-23-62(1) could be applied retroactively. Thus, the ALJ ordered that the Department refund a portion of the taxes that IEC had paid pursuant to the final assessments. In addition, the ALJ ordered that the Department refund the penalties it had assessed because, the ALJ determined, IEC’s failure to pay the taxes was understandable in
 
 *373
 
 light of the language of § 40-23-62(1) as it existed before May 1997.
 

 The Department and the City filed appeals to the Marshall Circuit Court; those appeals were consolidated. The Department, the City, and IEC filed cross-motions for a summary judgment. After considering arguments of counsel, the circuit court entered a summary judgment in favor of the Department and the City, concluding that the Department could apply the amendment to § 40-23-62(1) retroactively to collect taxes from IEC for the tax periods from January 1990 to December 1997. The judgment also reinstated the penalties assessed by the Department. After its postjudgment motion was denied, IEC appealed that judgment to the Alabama Supreme Court, which transferred the appeal to this court because it falls within our original jurisdiction.
 
 See
 
 Ala. Code 1975, § 12-3-10. The City and the Department make the same arguments on appeal; our references to the Department’s positions and arguments will therefore encompass those made by the City, and we will refer to the City and the Department collectively as “the Department.”
 

 “When an appellate court interprets a statute or considers the constitutionality of a statutory provision, no presumption of correctness attaches to the trial court’s interpretation of the statute.
 
 Pilgrim v. Gregory,
 
 594 So.2d 114 (Ala.Civ.App.1991). Where the facts of the case are undisputed and the trial court is called upon to determine a question of law, no presumption of correctness attaches to the trial court’s ruling and this court’s review is
 
 de novo. Tierce v. Gilliam,
 
 652 So.2d 254 (Ala.1994).”
 

 Valhalla Cemetery Co.,
 
 749 So.2d at 471-72.
 

 We are called on to decide in this case the scope of the retroactivity provision of Act No. 97-301, which amended § 40-23-62(1). As noted above, the act states that it “shall be retroactively effective for all open tax years upon its ... becoming a law.” Act No. 97-301, § 3. The act became effective on May 7, 1997. We must decide the meaning and effect of the phrase “open tax years” in the retroactivity provision.
 

 The retroactivity provision was challenged on constitutional grounds in
 
 Valhalla Cemetery Co.
 
 The taxpayer, in that case Valhalla Cemetery Company (“Valhalla”), had paid use taxes between April 1994 and March 1997 on items it had purchased from out-of-state vendors who did not have the requisite nexus with Alabama to be subject to Alabama’s sales-tax statutes.
 
 Valhalla Cemetery Co.,
 
 749 So.2d at 472. After the use-tax “loophole” was publicized as a result of a tax appeal in another case, Valhalla sued the commissioner of the Department, in his official capacity, seeking to have declared illegal the collection of use taxes on items purchased from out-of-state vendors.
 
 Id.
 
 at 471. Valhalla also sought to have the retroactivity provision of Act No. 97-301 declared unconstitutional.
 
 Id.
 
 The trial court declared the retro-activity provision unconstitutional, “enjoined the Department from collecting use taxes on goods purchased from out-of-state vendors and delivered into Alabama for the open tax years before the enactment of Act No. 97-301,” and ordered the Department to refund to Valhalla those use taxes it had paid on such purchases between 1994 and 1997.
 
 Id.
 
 Once the judgment was certified as final pursuant to Rule 54(b), Ala. R. Civ. P., the Department appealed to the Alabama Supreme Court; the appeal was transferred to this court pursuant to Ala.Code 1975, § 12-2-7(6).
 
 Id.
 

 This court considered whether the retro-activity provision of Act No. 97-301 was
 
 *374
 
 unconstitutional. We began by explaining that the legislature’s intent in enacting the amendatory act was “ ‘to clarify that current law exempts from use tax only that property sold at retail in Alabama on which sales tax was paid.’ ”
 
 Id.
 
 at 472 (quoting Act No. 97-301, § 2). We then explained the arguments presented in the trial court highlighting the need for the amendatory act:
 

 “In the trial court, Valhalla argued that it purchased products from out-of-state vendors and that those products were delivered into Alabama. Thus, it ai-gued, the sales would be subject to the sales tax because a sale is deemed closed on delivery of the product.
 
 See Oxmoor Press, Inc. v. State,
 
 500 So.2d 1098 (Ala.Civ.App.1986). Valhalla argued that the use tax did not apply when the sale was closed in Alabama. This interpretation of § 40-23-62, Ala.Code 1975, before its amendment, would allow a taxpayer to avoid both the use tax and the sales tax where goods were delivered into this state by an out-of-state vendor that was without sufficient contacts with Alabama to make it subject to the sales tax. The enactment of Act No. 97-301 closed off that interpretation of § 40-23-62 by providing that a transaction is exempt from Alabama’s use tax only if sales tax on the transaction has been paid to a licensed vendor. Section 3 of Act No. 97-301 provides that the statute is retroactive for all open tax years, i.e., two to three years. See § 40-2A-7(c)(2), Ala. Code 1975.”
 

 Id.
 
 at 472-73. We emphasized that “the retroactivity provision of Act No. 97-301 would prevent taxpayers from seeking a possible refund of use taxes paid on goods purchased from out-of-state vendors and delivered into Alabama.”
 
 Id.
 
 at 473.
 

 Turning to the issue of the constitutional challenge to the retroactivity provision, we noted that retroactive tax legislation had been historically upheld by the courts.
 
 Id.
 
 When a court is called on to consider whether retroactive legislation is constitutional, its focus is on whether the retroactivity of the legislation denies due process.
 
 Id.
 
 at 473-74 (quoting
 
 United States v. Carlton,
 
 512 U.S. 26, 30-31, 114 S.Ct. 2018, 129 L.Ed.2d 22 (1994)). In
 
 Carlton,
 
 “the [United States Supreme] Court set forth the test to determine whether retroactive tax legislation denies due process: first, the legislation must be ‘supported by a legislative purpose furthered by rational means,’ and second, the period of retroactivity must be ‘modest.’ ”
 
 Valhalla Cemetery Co.,
 
 749 So.2d at 474 (quoting
 
 Carlton,
 
 512 U.S. at 31, 114 S.Ct. 2018). Applying those principles, this court determined that “the retroactive provision of Act No. 97-301 is justified by a rational legislative purpose.”
 
 Id.
 
 at 475. In deciding also “that the period of retro-activity is modest,”
 
 id.,
 
 we noted that “Act No. 97-301 is retroactive for two to three years.”
 
 Id.
 
 at 474. The two- to three-year period of retroactivity in
 
 Valhalla Cemetery Co.
 
 was linked to
 
 the time
 
 limitation for filing a refund petition, which, pursuant to § 40-2A-7(c)(2)a., is either three years from the date a return was filed or within two years of the payment of the tax, whichever occurred later.
 

 The Department contends that the ret-roactivity provision of Act No. 97-301 permits it to assess use taxes due under the amended version of § 40-23-62(1) back to 1990 in the present case. It bases this argument, in part, on the fact that Accutek and IEC never filed use-tax reports with the Department. Thus, the Department contends, all tax years remain open by virtue of § 40-2A-7(b)(2)a., which permits the Department to enter an assessment at any time if “no return is filed as required.” Strangely, the Department conceded before the ALJ that, before the 1997 amend
 
 *375
 
 ment, Accutek and IEC were not required to file use-tax reports.
 

 IEC argues that neither it nor Accutek was required to file use-tax reports with the Department in the period before the effective date of Act No. 97-301 in May 1997 because, at that time, no use taxes were due on its purchases from out-of-state vendors that were closed in Alabama; those purchases were subject to the Alabama sales tax. § 40 — 23—1(a)(5) and § 40-23-2(1). Thus, it argues, consistent with the ALJ’s decision, that the Department may only enter assessments for the three tax years immediately preceding the preliminary assessments,
 
 see
 
 § 40-2A-7(b)(2), or, in this case, August 1995, which is three years before the entry of the Department’s September 1998 preliminary assessments. Otherwise, IEC argues, the application of the retroactivity provision raises anew the constitutional issue of whether the provision comports with due process, i.e., whether the period of retroac-tivity is “modest.”
 

 In response, the Department asserts that, based on the retroactivity provision in Act No. 97-301, Accutek and then IEC were required to file use-tax reports on their purchases from out-of-state vendors. Because of that fact, the Department concludes, Accutek’s and IEC’s failure to file those reports permits the Department to assess the taxes due at any time. In addition, according to the Department, the fact that the amendatory act served to “clarify” the existing law,
 
 see
 
 Act No. 97-301, § 2, renders all prior tax years “open” because the taxpayer was therefore always required to file a report.
 

 Putting aside any constitutional argument that IEC raises at the moment, we will endeavor to determine the meaning and effect of the phrase “open tax years” in the retroactivity provision of Act No. 97-301. We must be guided by the rules of statutory construction.
 

 “It is this Court’s responsibility to give effect to the legislative intent whenever that intent is manifested.
 
 State v. Union Tank Car Co.,
 
 281 Ala. 246, 248, 201 So.2d 402, 403 (1967). When interpreting a statute, this Court must read the statute as a whole because statutory language depends on context; we will presume that the Legislature knew the meaning of the words it used when it enacted the statute.
 
 Ex parte Jackson,
 
 614 So.2d 405, 406-07 (Ala.1993). Additionally, when a term is not defined in a statute, the commonly accepted definition of the term should be applied.
 
 Republic Steel Corp. v. Horn,
 
 268 Ala. 279, 281, 105 So.2d 446, 447 (1958). Furthermore, we must give the words in a statute their plain, ordinary, and commonly understood meaning, and where plain language is used we must interpret it to mean exactly what it says.
 
 Ex parte Shelby County Health Care Auth,
 
 850 So.2d 332 (Ala.2002).”
 

 Bean Dredging, L.L.C. v. Alabama Dep’t of Revenue,
 
 855 So.2d 513, 517 (Ala.2003). In addition, “ ‘ “ ‘[tjhere is a presumption that every word, sentence, or provision [of a statute] was intended for some useful purpose, has some force and effect, and that some effect is to be given to each, and also that no superfluous words or provisions were used.’ ” ’ ”
 
 Surtees v. VFJ Ventures, Inc.,
 
 8 So.3d 950, 970 (Ala.Civ.App.2008) (quoting
 
 Ex parte Uniroyal Tire Co.,
 
 779 So.2d 227, 236 (Ala.2000), quoting in turn other cases).
 

 The retroactivity provision makes the change to § 40-23-62(1) retroactive to “all open tax years upon its ... becoming a law.” Based on that language, the “open tax years” are tied to the date that Act No. 97-301 became a law, i.e., May 7, 1997.
 
 *376
 
 The open tax years as of May 7, 1994, depend on the situation of the taxpayer. In general, the open tax years extend to a date three years before the due date of a return or report or from the date of the filing of the return or report, whichever is later. § 40-2A-7(b)(2). In cases in which the taxpayer was not required to file a return or report, the open tax years are the three years immediately preceding the due date of the tax.
 
 Id.
 
 However, in those cases in which a taxpayer was required to file a return or report but did not or in cases in which a taxpayer filed a false or fraudulent return, the open tax years could conceivably reach back as far as when the taxpayer was required to have filed returns or reports or back to when those fraudulent or false reports or returns were filed, because the Department may enter a preliminary assessment in such circumstances at any time. § 40-2A-7(b)(2)a.
 

 The Department contends that the amendatory act served to clarify what the legislature intended § 40-23-62(1) to mean, and, therefore, it argues that the period of retroactivity reaches back to all tax years in which a taxpayer failed to file a use-tax report under the clarified exemption set out in § 40-23-62(1).
 
 See
 
 Act No. 97-301, § 2. Because under the Department’s analysis, § 40-23-62(1), as so retroactively amended, would have required Ac-cutek and IEC to have filed reports each month for each year between January 1990 and December 1997, the Department argues that Accutek and IEC failed to file reports as required, and, thus, that the Department had the right to enter an assessment against them at any time under § 40-2A-7(b)(2)a. If we understand the Department’s argument correctly, it believes that Act No. 97-301, because it was a mere “clarification” of the law, would apply retroactively even to the inception of the original language of § 40-23-62(1) in situations in which a taxpayer failed to file a use-tax report on purchases from out-of-state vendors upon which no sales tax was ever paid. Although the fact that the express purpose of Act No. 97-301 was curative and served to clarify the meaning of the use-tax exemption in § 40-23-62(1) could lead to a conclusion that the legislature intended the statute to be applied retroactively,
 
 see Riley v. Kennedy,
 
 928 So.2d 1013, 1016-17 (Ala.2005)
 
 (citing Horton v. Carter,
 
 253 Ala. 325, 328, 45 So.2d 10, 12 (1950)), that fact does not support the Department’s interpretation. Act No. 97-301 expressly provided for its retroactive effect in § 3. Application of the Department’s interpretation would render the language in § 3 “retroactively effective for all open tax years” meaningless and would, in fact, completely remove the need for the retroactivity provision of § 3. We are to give effect to all the words in the act, and we presume that the legislature intended each word serve a useful purpose; thus, we cannot agree with the Department’s interpretation of the interplay between § 2 and § 3 of Act No. 97-301. Instead, we conclude that to properly permit the clarification of the law the legislature intended, we must give effect to the language used in the retroactivity provision of § 3. Based on our interpretation of § 3, the Department’s conclusion that the retroactivity period is open-ended is incorrect.
 

 We are likewise unconvinced by IEC’s argument that the ALJ’s conclusion that the three-year period should run back from the date of the Department’s preliminary assessments in September 1998 is correct. IEC argues, based in large part on the ALJ’s opinion on rehearing, that the only open tax years were the three years immediately preceding the Department’s preliminary assessments because § 40-2A-7(b)(2) permits the Department to assess taxes only for the three years before the taxes were due in situations in
 
 *377
 
 which a return or report was not required to be filed by the taxpayer. This construction, IEC contends, permits both statutes — § 40-23-62(1) and § 40-2A-7(b)(2) — to have their field of operation. However, to apply the provisions of § 40-2A-7(b)(2) to restrict the power of the Department to assess use taxes that became due under the application of the ret-roactivity provision unduly interferes with the clear language and intent of the retro-activity provision, which ties the period of retroactivity to the date the amendment to § 40-23-62(1) became law — May 7, 1997.
 

 To give effect to the language in § 3 of Act No. 97-301 for the purpose of this case, we need only consider that the amendment of § 40-23-62(1) was essentially effective retroactively to May 1994, that is, three years before Act No. 97-301 became law and three years from the due date of the taxes that would have been due under the amended statute as of May 1994.
 
 [3]
 
 To do so results in a retroactive application of the amended language of § 40-23-62(1) and results in the conclusion that, as of May 1994 and through May 1997, Accutek and then IEC were required to file use-tax reports on purchases from out-of-state vendors upon which no sales tax had been paid. Because they were required, under the retroactive amendment of § 40-23-62(1), to file use-tax reports for those purchases, Accutek’s and IEC’s failure to do so permits the Department to assess taxes for those years because the tax reports were not “filed as required.” § 40-2A-7(b)(2)a. However, the tax years before May 1994 were not reopened by the retroactive application of Act No. 97-301, because, as of the effective date of the amendatory act, those tax years were already closed. That is, the tax years before 1994 were closed because, until the act became effective in May 1997, Accutek was not required to file a use-tax return for those years under the pream-endment wording of § 40-23-62(1), and the three-year period from the due date of any taxes that would have been due under the newly amended language of the statute had it been in effect during those years before 1994 had ended. The retroactivity provision did not serve to reopen those tax years because they were forever closed to the Department at the time the act became effective.
 
 Ex parte State Dep’t of Revenue,
 
 667 So.2d 1372, 1374 (Ala.1995) (“[T]he power to extend a limitations period can be exercised only where the bar was not complete before the enactment of the statute extending the period .... ”).
 

 We now turn to a consideration of IEC’s second argument: whether, as applied to IEC in this manner, the retroactivity provision in Act No. 97-301, § 3, is constitutional. The Department argues that we are barred from considering IEC’s constitutional argument for three reasons: (1) because IEC did not cross-appeal from the ALJ’s order; (2) because IEC waived the argument before the trial court at oral argument on the summary-judgment motions; and (3) because IEC did not serve the attorney general as required by Ala. Code 1975, § 6-6-227. We note that IEC had no reason to appeal from the ALJ’s order, as it applied the three-year statute of limitations of § 40-2A-7(b)(l) and prevented, by and large, the retroactive application of Act No. 97-301; it was the reversal of the ALJ’s order by the trial court that triggered IEC’s argument that applying the statute retroactively to cover a seven-year period is unconstitutional as applied to IEC. Because IEC challenges
 
 *378
 
 the trial court’s enforcement of the retro-activity provision beyond the period it contends is constitutional and permitted by the wording of Act No. 97-301, § 3, IEC’s challenge to the statute is not a facial challenge but an “as applied” challenge, and service on the attorney general was therefore not required.
 
 Ex parte Squires,
 
 960 So.2d 661, 665 (Ala.2006). Because IEC disputed in its postjudgment motion and on appeal the statement in the trial court’s judgment indicating that IEC had waived the constitutional argument it now raises, we will briefly consider that argument here.
 

 As we have explained, we considered the constitutionality of the retroactivity of Act No. 97-301 in 1999 in
 
 Valhalla Cemetery Co.
 
 We found the retroactive period under Act No. 97-301, § 3, to be two to three years under the facts of that case and concluded that the period was therefore “modest.”
 
 Valhalla Cemetery Co.,
 
 749 So.2d at 474-75. IEC argues strenuously that permitting the statute to be applied retroactively for “more than 7 years” (or back to 1990) is unconstitutional because doing so is so harsh and oppressive as to violate IEC’s due-process rights. However, in permitting the Department to collect from Accutek and IEC use taxes due from May 1994 forward, we are
 
 not
 
 applying § 40-23-62(1) retroactively for more than seven years. The retroactive reach of the statute in this particular situation is, as we have said, three years.
 
 Id.
 
 The failure of Accutek and IEC to properly remit the use taxes that became due under the retroactive amendment to § 40-23-62(1) is what triggered the Department’s ability under § 40-2A-7(2)(b)a. to assess those taxes in 1998. We need not consider IEC’s constitutional argument further.
 

 Finally, we turn to IEC’s argument regarding the 10% failure-to-file penalty,
 
 see
 
 § 40-2A-ll(a), and the 5% negligence penalty,
 
 see
 
 § 40-2A-ll(e), assessed against it for its failure to file use-tax reports from January 1990 to December 1997. IEC argues that the ALJ properly waived the penalties for reasonable cause under § 40-2A-ll(h). The ALJ found reasonable cause to waive the penalties, although it is apparent that the trial court did not agree that reasonable cause to waive the penalties existed. The ALJ waived the penalties imposed by the Department for reasonable cause pursuant to § 40-2A-ll(h) because, he said, IEC “was not required to file use tax returns before May 1997” and, he opined, IEC “may not have been aware that use tax returns were due after Act 97-301 was enacted” in May 1997. We agree with the ALJ that IEC’s failure to file use-tax returns under these circumstances supports a conclusion that the penalties assessed by the Department should be waived for reasonable cause under § 40-2A-ll(h).
 

 In conclusion, we have determined that the Department may assess use taxes against Accutek and IEC for the period between May 1994 and December 1997. The penalties assessed for those years may not be collected because they are waived for reasonable cause under § 40-2A-ll(h). Upon remand, the Department is instructed to properly compute the use taxes due under this opinion and to refund, if necessary, any additional amounts IEC has paid pursuant to the original assessments.
 

 REVERSED AND REMANDED WITH INSTRUCTIONS.
 

 THOMPSON, P.J., and PITTMAN, BRYAN, and MOORE, JJ., concur.
 

 [1]
 

 . The three assessments were in the amount of $60,625.80 for state sales taxes, $33,238.27 for state use taxes, and $155,440.89 for City use taxes.
 

 [2]
 

 . The ALJ first ordered that the Department refund a portion of the taxes IEC had paid. The Department and the City sought a rehearing as to that order; in his order on rehearing, the AU explained in detail the reasoning underlying his order.
 

 [3]
 

 . As the ALJ correctly noted, at the time Act No. 97-301 became effective, "the general three year statute was open for periods back to April 1994, because the May 20, 1994, due date of the April 1994 return was within three years of the effective date of the act.”